UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| JESUS JAVIER MALAGON,<br><br>Defendant-Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent. | Case Nos.  1:22-cv-00149-BLW<br>1:18-cr-00059-BLW<br><br><br>**ORDER** |

Before the Court is Jesus Javier Malagon's Motion to Vacate, Set Aside or

Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 105 in Crim. Case No. 1:18-

cr-00059-BLW and Dkts. 1 and 3 in Civ. Case No. 1:22-cv-00149-BLW).[1] The

Government has responded and Malagon has replied. Civ. Dkts. 10, 15. Having

reviewed the record and the parties' submissions, the Court will deny the Motion.

---

[1] These filings are distinguishable only with respect to their signature blocks. Only the second filing listed is signed. *Compare* Civ. Dkt. 3 *with* Civ. Dkt. 1, Crim. Dkt. 105. Accordingly, the Court will cite to that document when referencing the Motion.

# BACKGROUND

**A.    Factual**

Officer Austin Smith testified that he initiated a traffic stop in Shoshone, Idaho, on January 30, 2018, after observing Malagon's car speeding and crossing the center line. *Trial Tr.* vol. 1, 46-47, Crim. Dkt. 87. Officer Smith asked him about a strong marijuana odor coming from the vehicle, called for backup, and was heading back to his patrol vehicle to "run" Malagon's information when Malagon fled the scene at a high rate of speed. *Id.* at 47-50.

While pursuing Malagon, Officer Smith observed items being thrown from the driver's side window in what appeared to be a small cellophane-type wrapper. *Id.* at 53. A confidential informant who was a passenger in Officer Smith's vehicle at the time testified that she "saw things flying out of the vehicle [that] looked like bags." *Trial Tr.* vol 2, 263, Crim. Dkt. 88. She described them as "little baggies, smaller than a sandwich bag." *Id.* The evidence at trial showed that the high-speed chase ended when Defendant's vehicle crashed off the side of the road. The video recording submitted with the Government's Response to a Motion to Suppress confirmed that Malagon threw items from the vehicle on two occasions. *Resp.*, Ex. 1, Crim. Dkt. 35.

After the vehicle crashed, Defendant first exited and then returned to his vehicle. Officer Smith observed Defendant "digging" in the center console. In

response to Officer Smith's commands to show him his hands or he would shoot him, Defendant began saying, "Sir, please don't shoot me. Sir, please don't shoot." *Trial Tr.* vol. 1, 60-61. Officer Smith saw a black pistol come across the steering wheel, and saw Defendant quickly turn towards him and fire a round. Officer Smith testified he saw a muzzle flash and heard a "whiz" go by and then returned fire striking Defendant multiple times. *Id*. at 62-63.

After the shooting and upon arrival of back-up, Officer Smith was still wearing his body-worn camera which he had activated at the beginning of the traffic stop and left running until the end of the incident. *Id*. at 68. He noticed a shell casing on the driver's seat and saw a firearm where the center console meets the radio. *Id*. at 69. The camera video was introduced and admitted at trial as Government's Exhibit 1001. *Id*. at 70. An enhanced version was admitted as Exhibit 1002. *Id*.

Two subsequent searches of the vehicle pursuant to search warrants revealed two spent 9 mm casings, a bullet fragment, various marijuana products, drug paraphernalia, sandwich bags, and a loaded .38 caliber revolver. *Trial* Tr., vol. 2, 341-43, 352-53, 365, 389.

## B.    Procedural

On February 14, 2018, Malagon was charged with unlawful possession of two firearms in violation of 18 U.S.C. 922(g)(1); possession of marijuana with

intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and use of a
firearm during and in relation to a drug trafficking crime and possession of a
firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.
924(C)(1)(A). Malagon was prohibited from possessing firearms due to his 2006
state court felony drug conviction, and he had discharged one of those firearms in
furtherance of the offense. *Indictment*, Crim. Dkt. 1.

On August 15, 2018, a Superseding Indictment was filed containing the
original three counts and charging three additional counts related to conduct
occurring on August 23, 2016: unlawful possession of a firearm following a prior
felony conviction in violation of 18 U.S.C. § 922(g)(1); possession of marijuana
with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and
possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1)
and (b)(1)(C). *Superseding Indictment*, Crim. Dkt. 27. Malagon had been on
release and awaiting trial on those additional charges at the time he committed the
2018 conduct. PSR ¶ 48.

On November 19, 2018, defense counsel filed a Motion for Relief from
Prejudicial Joinder (Motion to Sever) of the counts pertaining to the 2016 conduct.
*Mot.*, Crim. Dkt. 32. Malagon contended that he would be prejudiced by a jury
hearing about the similar but as yet unproven conduct. *Id*. He also sought to

suppress evidence gathered as the result of the traffic stop alleging lack of probable cause. *Mot. to Suppress*, Crim. Dkt. 33.

On January 18, 2019, the Court denied the Motion to Suppress on the grounds that even if the stop had been illegal, Malagon's subsequent flight and high-speed chase dissipated any taint from the stop. *Mem. Dec.*, Crim. Dkt. 41 at 2. On January 30, 2019, the Court granted the Motion to Sever. *Min, Entry*, Crim. Dkt. 44.

Malagon was tried on and convicted of the original three counts pertaining to the 2018 events. The remaining counts in the Superseding Indictment pertaining to the 2016 events were dismissed at sentencing. *Min. Entry*, Crim. Dkt. 75. At sentencing, defense counsel argued for a downward departure based on the injuries Malagon received after being shot multiple times by Officer Smith and objected to the alleged double-counting based on the 6-level enhancement pursuant to USSG § 3A1.2 for assaulting a law enforcement officer during the commission of a crime while also being sentenced for a § 924(c)(1)(A) offense. *Mot.*, Crim. Dkt. 73. The Court denied the Motion and imposed a top-of-the guideline sentence of 355 months consisting of 120 months on Count 1, 115 months on Count 2, and a consecutive 120 months on Count 3. *Min. Entry*, Crim. Dkt. 75; *Judgment*, Crim. Dkt. 76.

Malagon appealed on the grounds that the Court abused its discretion under Federal Rule of Evidence 404(b) by admitting evidence of the 2016 pending state court charges to prove the 2018 charge. The Ninth Circuit rejected the argument finding that the Court carefully considered the relevant factors, balanced the probative value of the evidence against the danger of unfair prejudice, and gave the jury a limiting instruction. *USCA Mem.*, Crim. Dkt. 102.

Malagon is currently incarcerated at FCI Victorville Medium II with a projected release date of August 19, 2043.

## STANDARD OF LAW

### 1. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds on which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that a court must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to

relief." "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

The court may also dismiss a § 2255 motion at various stages, including pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the court does not dismiss the proceeding, the court then determines under Rule 8 whether an evidentiary hearing is required. The court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

## 2. Ineffective Assistance of Counsel

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To establish a

claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's performance was deficient, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. To establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

More particularly with respect to the performance prong, a defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" or that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686-87. There is a strong presumption that counsel's performance falls "with the wide range of reasonable professional assistance." *Id*. at 689. This is so because "[it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act of omission of counsel was unreasonable." *Id.*

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

Finally, in evaluating an ineffective assistance of counsel claim, the court may consider the performance and prejudice components of the S*trickland* test in either order. *Id.* at 697. The Court need not consider one component if there is an insufficient showing of the other. *Id.*

## DISCUSSION

Malagon makes four claims of ineffective assistance of counsel. The Court will address each claim in turn.

### A.   Failure to Retain Experts to Examine Body-worn Camera Footage or to Examine a Bullet Fragment

Malagon contends that he would not have received the 6-level upward adjustment pursuant USSG § 3A1.2(c)(1) if counsel had retained experts to examine the body-worn camera video and the bullet fragment found in the vehicle. That section provides for a 6-level increase:

> (c) If, in a manner creating a substantial risk of bodily injury, the defendant . . .
>
> > (1) knowing or having reasonable cause to believe that a person was a law enforcement officer,

assaulted such officer during the course of the
offense or immediate flight therefrom . . . .

USSG § 3A1.2(c)(1).

Malagon contends that had counsel retained an expert, the evidence would
have shown that he had "merely" fired a shot into the ground near his car to cause
Officer Smith to kill him. He claims he wanted to commit suicide-by-cop because
of the pain he was experiencing from the car wreck injuries and because he feared
going to prison. *§ 2255 Mot.* at 18-19. He alleges that expert examination of the
camera footage and the bullet fragment would have proven that he had fired that
shot into the ground.

### 1.    Camera Footage

Malagon attempts to cast doubt on Officer Smith's testimony that he saw a
flash from the firearm's muzzle pointing at him and heard the bullet "whiz" by
him. *Id*. at 19. He claims that the flash did not definitively show he shot at Officer
Smith and that Officer Smith could not have heard a bullet "whiz" by.

The gist of Malagon's argument is essentially that the muzzle flash would
have looked the same in the video or to Officer Smith regardless of where he
aimed his firearm. However, even if experts had testified that Officer Smith's
perception of the muzzle flash as pointing at him is not conclusive evidence that
the firearm *was* pointed directly at him, that testimony would likewise not have

been conclusive that Malagon had fired into the ground. Malagon also claims that it is impossible to tell from the body-worn camera video or enhanced video that he shot at Officer Smith based on its "low resolution" and the "manipulate[d]" brightness and contrast.[2] *Id*. at ¶ 32. However, the "manipulation" of the brightness and contrast was done by an FBI Agent to make the video segment more clear.

In his Reply, Malagon claims the video has been spliced. *Reply,* Malagon Decl. ¶ 3, Civ. Dkt. 15 at 22. However, he offers no basis for that allegation. To the contrary, Malagon's belief that it was spliced suggests that the video indeed shows that he fired at Officer Smith.

As for the allegation that Officer Smith could not have heard a bullet go past him, Malagon claims that defense counsel should have called "any of the many available Veterans of Iraq and Afghanistan" to testify that it is impossible to hear a sound from a passing 9 mm round. *§ 2255 Mot.* at ¶ 33. Whether Officer Smith could have heard the bullet go by does not change the fact that the video shows Malagon shooting at him confirming his testimony.

---

[2] The Government engaged an FBI computer forensic examiner, Stacey Evans, to enhance or make larger a small portion of the video (3 minutes, 36 seconds to 3 minutes 39 seconds). Agent Evans testified that portion of the video was enlarged and "some brightness and contrast" was "manipulated to help identify or clarify images." *Id*. at 131. Other than placing some yellow circles to highlight certain things, nothing was added to the original video. *Id*. at 131.

Malagon does not allege that he told defense counsel about his intent to commit suicide-by-cop and that counsel then failed to call him as a witness or otherwise suggest that possibility. Furthermore, Malagon's current suicide-by-cop theory conflicts with Officer Smith's emphatic testimony that Malagon several times said, "Don't shoot me." Finally, he never mentioned in his allocution that he had not aimed at Officer Smith. Rather, he made statements such as: "I understand the situation I put myself in through my own actions;" "I wish I could take . . . all of those poor choices back;" "I apologize to Austin Smith for scaring him so much;" and "Í just made a stupid, idiotic decision." *Sent. Tr.* at 38, Crim. Dkt. 95. Malagon's current suicide-by-cop position is simply not credible.

The mere fact that Malagon fired his weapon in the dark (wherever it was aimed) following a high-speed chase created a substantial risk of bodily injury to an individual he obviously knew was a law enforcement officer.

### 2.   Bullet Fragment

Malagon contends that expert examination of the bullet fragment (Gov't. Ex. 1070) would have shown that he fired into the ground rather than at Officer Smith. He claims that there is a reasonable probability that counsel would have been able to demonstrate that there was no reliable evidence that he ever fired his gun at Officer Smith and thus would have been found not guilty of Count Three and would not have received the 6-level enhancement under USSG § 3A1.2(c)(1).

However, the bullet fragment was found on the seat of the vehicle, not on the ground. *Trial Tr.* vol. 2, 352-53.

The Government contends that the fragment found on the driver's seat was "largely irrelevant evidence" because it was more likely one of the rounds Officer Smith fired at Malagon. *Response*, at 10. Even Malagon stated that "it had to be from one of the 27 rounds" Officer Smith fired at him. *Mot.* ¶ 34. He also said that "[i]f it had actually 'whizzed' by Officer Austin Smith, it was highly unlikely that it would ever have been found, much less found in the car." *Id*. Indeed, there was no testimony or argument that the bullet fragment found on the seat even came from Malagon's firearm.

The Government argues that the more important evidence was the two spent shell casings (one of which was found on the seat and the other lodged between the windshield and the dashboard) that were found by the Idaho State Forensics Laboratory to have been fired from Defendant's firearm which belies Defendant's claim that he only fired one bullet. *Trial Tr.* vol. 2, 352, 365, 371, 388; vol. 3, 444-47, and 480-83.

In his Reply, Malagon continues to press the idea that expert examination of the bullet fragment (Ex. 1070) would show that he fired into the ground rather than at Officer Smith. In his attached Declaration, Malagon alleges that he has personal

knowledge there was only one bullet fragment collected and it had been found on the ground.

Malagon's Reply did not address the Government's Response that the claim in his § 2255 Motion is based on an "incoherent" argument that *if* the fragment had been found on the ground outside of his vehicle instead of on the seat, then he could show that he fired into the ground. Rather, he pivots and appears to be alleging in his Reply that the bullet fragment had been found on the ground and moved to the seat of the car based on photographs in discovery that showed a fragment in the ground. The photographs attached to his Reply are unclear to say the least. But to say any fragment in the photograph is "his" when Officer Smith fired so many shots that did not hit him, is pure speculation.

### B.     Failure to Object to § 3C1.1 Enhancement

Malagon claims counsel should have objected to the two-level enhancement imposed pursuant to USSG § 3C1.1 based on his throwing items from his vehicle when he was fleeing from Officer Smith. *§ 2255 Mot*., ¶ 35. He claims that the enhancement was contrary to USSG § 3C1.1 cmt. n.4(D) because his throwing the items from his vehicle "was NOT alleged to have resulted in a 'material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." *Mot*., ¶ 18A (emphasis in original). The Court disagrees. The trial testimony and the video established that Malagon threw items characterized as

baggies out the driver's side of the vehicle while he fled Officer Smith and the Presentence Report specifically based the enhancement on that conduct. The Court adopted the findings of the Presentence Report at the sentencing. A specific finding that the conduct materially hindered the sentencing was not required.

The application note Malagon relies on gives examples of conduct or situations in which the enhancement is warranted, including, as relevant here:

> *destroying or concealing* or directing or procuring another person to destroy or conceal *evidence that is material to an official investigation or judicial proceeding* (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; *however, if such conduct occurred contemporaneously with arrest*, (*e.g.*, attempting to swallow or *throw away a controlled substance*), *it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the* official investigation or prosecution of the instant offence or the *sentencing of the offender*;

USSG § 3C1.1 cmt. n.4(D) (emphasis added).

During his 2016 offense, Malagon possessed cocaine in a small baggie. Based on the similarity to the 2016 conduct, it is highly likely that the items he threw out the window in the 2018 incident contained cocaine or another controlled substance which would have resulted in a higher guideline range. There is no plausible explanation and none is offered, for throwing items out of a vehicle driven at high speed unless the items were incriminating. Because throwing the

baggies from his vehicle was a "material hindrance" to an accurate guideline range calculation at sentencing, there was no basis for counsel to object to the enhancement.

### C.    Multiple Failures of Counsel

In Ground Three, Malagon alleges various grounds of ineffective assistance of counsel at all stages from pretrial through appeal. He contends that counsel failed to investigate or present available, material exculpatory evidence and testimony at trial and failed to timely object to the unlawful admission of evidence; failed to investigate or move for either dismissal based on lack of venue or to move for a change of venue; failed to investigate or present available evidence and legal authority material to sentencing and failed to object to false and unreliable evidence used to determine his guidelines range at sentencing; failed to investigate or present the strongest issues for his direct appeal; and that counsel operated under an actual conflict of interest in that he "owed a 'duty' other than to Malagon."

All of these allegations lack specificity or supporting facts and are totally conclusory. For example, he does not identify the omitted evidence or testimony, grounds for a change of venue, or the basis of the conflict-of-interest allegation. Malagon does not allege facts showing how, but for counsel's purported errors, the outcomes at trial and sentencing would have been different. "Conclusory

allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

### D.     Violations of Multiple Constitutional Rights

In Ground 4, Malagon claims his conviction and sentence violated various constitutional rights including the right to freedom of speech, to keep and bear arms and to petition, to be free of unreasonable search and seizure, to due process of law, his right to counsel, jury trial, confrontation of witnesses, present a defense, compulsory process, and to be free of cruel and unusual punishment. *Mot.*, at 5-6; 22-23.

Once again, Malagon has failed to present any facts or arguments to support these claims. These unsupported conclusory allegations do not warrant relief. *Id*.

## CONCLUSION

As stated above, the *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986) and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695. To establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687-88. The Court finds that Malagon has not met this standard. The record is clear that defense counsel's

performance throughout all stages was not deficient. He vigorously defended the case by filing pre-trial motions, thoroughly cross-examining key witnesses, advocating for a departure at sentencing, and appealing what was likely the strongest issue in his case. That his efforts failed does not warrant a finding that his performance was deficient.

Neither discovery nor an evidentiary hearing is necessary to resolve the Motion. Malagon's claims are subject to dismissal based on the record for the reasons stated above. Accordingly, his requests for discovery, evidentiary hearing, and appointment of counsel are denied.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion or claims within a § 2255 motion on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the

ORDER - 18

motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Slack*, 529 at 484; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

Having reviewed the record in this case, the Court finds that reasonable jurists would not find its determinations regarding Malagon's claims to be debatable or deserving of further review. Accordingly, the Court will not issue a certificate of appealability as to any issue raised in the § 2255 motion.

## ORDER

**IT IS ORDERED that:**

1.  Malagon's Motion pursuant to 28 U.S.C. § 2255 (Civ. Dkts. 1, 3; Crim. Dkt. 105) is **DENIED AND DISMISSED** in its entirety; and

2.  No Certificate of Appealability shall issue. If Malagon wishes to proceed to the United States Court of Appeals for the Ninth Circuit, he must file a notice of appeal in this Court within thirty days after entry of this Order, and he must seek a Certificate of Appealability from the United States Court of Appeals for the Ninth Circuit in accordance with Federal Rule of Appellate Procedure 22(b)(2).

3.   If Malagon files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: March 4, 2024

B. Lynn Winmill
U.S. District Court Judge

ORDER - 20